1 DIANE J. HUMETEWA
United States Attorney
2 District of Arizona
SHELLEY K.G. CLEMENS
3 Assistant U.S. Attorney
Oklahoma State Bar No. 16567
4 United States Courthouse
405 W. Congress Street, Suite 4800
5 Tucson, Arizona 85701
Telephone: 520-620-7300
6 Email: shelley.clemens@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR 08-0303-TUC-DCB(CRP) |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS UNLAWFUL SEIZURE AND MOTION TO SUPPRESS STATEMENTS |
| Christopher Matthew Clements | |
| Defendants. | |

NOW COMES the United States of America, by its attorneys, DIANE J. HUMETEWA United States Attorney for the District of Arizona and SHELLEY K.G. CLEMENS, Assistant United States Attorney, and hereby submits its response to the Defendant's Motion to Suppress Unlawful Seizure and Motion to Suppress Statements.

I. **FACTS**

On October 3, 2007, officers with the Tucson Police Department received a report from a woman, who disclosed that she had been tortured and sexually assaulted. She further disclosed that other females had been held captive, were tortured and then forced to perform sexual acts with their captor and his associates. Based on her report, on October 5, 2007, undercover officers began performing surveillance on a structure at 2640 S. Cottonwood Lane, Tucson, AZ, where it was believed the suspect was residing.

While there, undercover officers observed the defendant approach the structure, either put something into or take something out of the trash, and then loiter in the area for a little bit. The defendant was then observed getting into his vehicle and leaving the area. Undercover officers followed him to the Circle K on 22nd and I-10. Not knowing at that point what his identity was or his involvement with the suspected residence, the undercover officers contacted a patrol officer to make contact with the defendant and determine his identity.

Officer Chris Morin made contact with the defendant while he was still at the Circle K. Contrary to the defendant's assertion in his Motions to Suppress, the defendant was not in his car when officers made contact, nor was he removed from his car. The defendant was inside the Circle K, when Officer Morin approached him and asked if he would mind stepping outside and answering a few questions. The defendant voluntarily agreed to do so. The defendant accompanied Officer Morin outside, where he spoke to Officer Morin, in the presence of two undercover officers. He was not in custody, he was not handcuffed or restrained in any fashion, and he was free to leave.

When asked his name, the defendant initially lied to the officer and told him his name was "Donald Johnson." Officer Morin radioed dispatch regarding the name "Donald Johnson." The name "Donald Johnson" came back with no returns found, which was highly unusual. Believing the name to be false, the officer advised the defendant that lying to an officer was illegal. The defendant then gave a second false name. A check of the second name returned the same results. When confronted with the results, the defendant finally advised the officer of his true and correct name. It was then determined that there was an outstanding warrant for the defendant out of Oregon, but that it was non-extraditable. Upon learning of the defendant's true identity, officers also determined that he was a convicted sex offender who had a duty to register. The defendant was then taken into custody for giving
///

false information to a police officer, and advised of his duty to register as a sex offender in the State of Arizona.

The contact with the defendant took place in the parking lot of the Circle K. He was not placed under arrest or restrained in any way until the end of the interview, after it was determined that he had lied twice to officers, and there was probably cause for his arrest. At no time did he ask to leave or attempt to leave.

II. **ARGUMENT AND AUTHORITY**

In his motion to suppress the unlawful seizure, the defendant claims that his arrest, as well as any evidence derived the encounter with law enforcement, should be suppressed, as he was unlawfully seized by law enforcement. In his motion to suppress statements, the defendant further argues that any statements made by him during the police contact on October 5, 2007, should be suppressed as they were the product of a custodial interrogation and subject to *Miranda* restrictions.

First, the defendant's identity cannot be suppressed, regardless of the legality of the encounter. Second, the contact with the defendant was a consensual, non-custodial encounter to determine his identity and nexus to the structure they had under surveillance. And finally, once the defendant provided false information to the officer, he committed a new offense in the officer's presence which gave the officers has reasonable suspicion to detain him in order to satisfy their suspicions, as well as probable cause to place him under arrest for a state charge of giving false information to a law enforcement officer.

A. THE DEFENDANT'S IDENTITY IS NOT SUPPRESSIBLE.

The government seeks to introduce evidence of the defendant's identity, which is relevant to show that he was present in the District of Arizona as early as October 5, 2007. Even if this Court were to conclude that Officer Morin's contact with the defendant was legally infirm, it is well-settled that "[a] defendant's identity need not be suppressed merely because

it is discovered as the result of an illegal arrest or search." *United States v. Guzman-Bruno,* 27 F.3d 420, 421 (9th Cir. 1994) (The identity of a defendant in an illegal re-entry case need not be suppressed where police, suspicious of defendant's attire and the location he was standing, approached him, patted him down, asked him where he was born, and interviewed him in administrative proceedings without advising him of his *Miranda* rights.) To the contrary, "there is no sanction to be applied when an illegal arrest leads only to discovery of the man's identity." *Id.* In fact, "[t]he 'body' or identity of a defendant . . . is never itself suppressible as a fruit of an unlawful arrest." *Id.* at 422 (*citing INS v. Lopez-Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483 (1984)). Therefore, "[a]n illegal arrest would not serve to suppress [a defendant's] identity since 'there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence.'" *Id. (Citation omitted.)*

B. **THE STATEMENTS OF THE DEFENDANT ARE ADMISSIBLE AS PART OF A CONSENSUAL, NON-CUSTODIAL, ENCOUNTER.**

The government also seeks to introduce evidence that the defendant provided two false names, as well as finally admitting his correct identification, while speaking with the officers.

1. <u>THE DEFENDANT WAS NOT SEIZED FOR PURPOSES OF A FOURTH AMENDMENT VIOLATION.</u>

It is well established that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to answer questions. *See Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *see also Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983);*United States v. Mendoza-Cepeda,* 250 F.3d 626, 628 (8th Cir.2001). See also *Orhorhaghe v. INS*, 38 F.3d 488, 494 (9th Cir.1994). This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place. *See United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994). Moreover, it is clear that the permissible questions may include

a request for consent to search, *see Muehler*, 544 U.S. at 101, 125 S.Ct. 1465, "as long as the police do not convey a message that compliance with their requests is required." *United States v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382 (1991). Absent indicia of force or aggression, a request for identification or information is not a seizure or investigatory stop. *See United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1505 (9th Cir.1988).

Officer Morin requested the defendant's assistance in answering a few questions, and asked him if he would step outside. The defendant agreed. He did not lay hands on the defendant and remove him from the Circle K. The purpose of the inquiry was to establish the defendant's identity, and to determine if he knew anything about the residence in question. As no time was the defendant restrained or advised he could not leave until he was placed under arrest. As such, there was no Fourth Amendment seizure.

Officer Morin's check of the defendant's identity through dispatch was not a Fourth Amendment seizure. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007.) (Police officer's check of passenger's identification with radio dispatch during a traffic stop was not a "search" or "seizure" under the Fourth Amendment). The fact that the officer told him that he believed that the defendant had given a false name, and warned him of the consequences of such action, did not turn the encounter from consensual to non-consensual, where he did not threaten the defendant or compel him to stay.

Even if the court determines that the defendant was "seized" once Officer Morin admonished him of the consequences to tell the truth, at that point, Officer Morin would have been justified from that point forward in detaining the defendant as part of a valid investigatory stop. At that point, the defendant had given the officer false information in the form of a false name, which was a violation of law. The officer would have been justified in detaining the defendant as part of a *Terry* stop to determine what the defendant's true identity was. *See United States v. $25,000 U.S. Currency*, 853 F.2d at 1506-1507. From

///

that point, the detention, if any, lasted no longer than necessary to effectuate the purpose of the detention, which was to determine the defendant's identity.

2. MIRANDA WARNINGS ARE NOT REQUIRED FOR A NON-CUSTODIAL INTERVIEW.

The Defendant also argues that the court should suppress any statements made by the defendant, which would include his admissions that he had provided the officers with a false identity, as any statements "were taken without the prophylatic protections guaranteed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." (See defendant's Motion to Suppress Statements - Page 3.) In order for the defendant to make out a claim under *Miranda,* however, his statements must have been the product of custodial interrogation. *Id.* at 444

Whether an individual is in custody for purposes of *Miranda* depends on the totality of the circumstances at the time the defendant is interviewed. *United States v. Allen*, 699 F.2d 453, 458 (9th Cir. 1982). A trial court must determine if a reasonable person in the defendant's position would conclude that he was not free to leave. *Id.* at 324; *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). The following factors are among those relevant in making that determination:

1) The language used by the officers in summoning the person interviewed;

2) The physical characteristics of the place where the interrogation occurred;

3) The degree of pressure applied to detain the individual;

4) The duration of the detention; and

5) The extent to which the person was confronted with evidence of his guilt. *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001); *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985). Neither a police officer's subjective intent nor a defendant's unusual susceptibilities are relevant to the inquiry. *Stansbury v. California*, 511 U.S. 318, 323,

325 (1994). The ultimate question, however, is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. at 325. In determining the custody status of an individual, courts should consider if the individual "voluntarily approached or accompanied law officers *understanding that questioning would ensue.*" *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (emphasis in original) (Court found defendant had not willingly submitted to police questioning by entering her own business while police were there executing search warrant.)

A single officer's initial contact with a person asking if he would step outside does not rise to the level of causing a reasonable person to feel that he was in custody. The defendant was aware that the purpose of going outside was to answer some questions. The interview took place in the parking lot of a Circle K, in full view of the public. The questioning of the defendant took approximately 15-20 minutes, and the only confrontation that took place was when officers had cause to believe the defendant had lied about his name. Officer Morin's warning to the defendant that lying to an officer was against the law did not rise to the level that a reasonable person would believe he was in custody. Simply because the defendant subjectively may have thought that he would likely be arrested if he gave his true name is not enough to show that he was "in custody" for purposes of *Miranda*. There was no formal arrest nor was there an outward restraint on the defendant's freedom to the same degree as an arrest. He could have stopped the questioning at any time.

Since the defendant was not in custody for purposes of *Miranda* at the time of his admission that he had provided the officers with a false identity, his admission is not subject to suppression. Therefore, his motion to suppress statements should be denied.

///

///

///

## III. THE DEFENDANT COMMITTED A NEW AND DISTINCT CRIME IN THE PRESENCE OF THE OFFICERS, WHICH IS AN EXCEPTION TO EXCLUSIONARY RULE.

Even if the initial contact with the Defendant is deemed to be an illegal seizure, Defendant's subsequent illegal act of giving the officer false information triggers an exception to the exclusionary rule of the "fruit of the poisonous tree" doctrine. "If a suspect's response to an illegal stop 'is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime.'"; *United States v. Sprinkle*, 106 F.3d 613 (4th Cir.1997) *citing United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982).

> There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest. As the *Bailey* court recognized, "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Id.* Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible. *Id* at 1018.

*Sprinkle*, at 619. In *Bailey, supra*, the Eleventh Circuit held that even assuming the first arrest was illegal, the second arrest was legal because the defendant, when caught after fleeing, struck the DEA agent with his fists and tried to grab the agent's gun during the ensuing struggle. *Bailey*, 691 F.2d at 1018-19; *See also*, *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984)(assuming attempted search of passenger was illegal, driver's "shooting [at police] was an independent intervening act which purged the taint of the prior illegality.")

During the interview with the defendant, he twice gave officers false information in violation of A.R.S. § 13-2907.01, presumably in order to avoid arrest for an out-standing warrant from Oregon. By giving officers that false information, he committed a new offense that provided officers probable cause to arrest him. The arrest for this new crime was legal, and not the fruit of any possible poisonous tree. As such, the circumstances surrounding his arrest and his identity would not be suppressible. *United States v. Washington*, 490 F.3d 765 (9th Cir.2007) (evidence resulting from an illegal seizure will normally be suppressed, unless there was an intervening act that purges the taint of the fruit of the poisonous tree.)

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the government respectfully requests that this court deny both the defendant's Motion to Suppress Unlawful Seizure and Motion to Suppress Statements. The defendant's identity cannot be suppressed regardless of the legality of the contact with officers. In addition, there was not an unlawful seizure of the defendant as the contact with the defendant was consensual. His statements were made voluntarily and were the product of a non-custodial interview. Finally, his intervening act of committing a new offense while in the presence of the officers purges any taint from evidence discovered as a result of that new offense.

Respectfully submitted,

DIANE J. HUMETEWA
United States Attorney
District of Arizona

*S/ Shelley K.G. Clemens*
SHELLEY K.G. CLEMENS
Assistant U.S. Attorney

Copy of the foregoing served electronically
or by other means this 14th day of April, 2008, to:

John Kaufmann, Esq.
Attorney for the defendant