IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MATTHEW CLEMENTS,<br><br>    Defendant. | No. CR 08-00303-TUC-DCB [CRP]<br><br>REPORT AND RECOMMENDATION |

Defendant Clements filed two motions related to the events at the time of his arrest; Motion To Suppress Unlawful Seizure *[Dkt 8]*, and Motion To Suppress Statements *[Dkt 9]*. The Government opposes both motions. Defendant's identity is not subject to suppression. Nor does there appear to be any evidence subject to suppression. For this reason, the Court recommends that the motion be denied.

## BACKGROUND

On the evening of October 5, 2007, Jobe Dickinson was conducting surveillance in the parking lot of a bank in his capacity as a Tucson police officer. Specifically, he was conducting surveillance on a house while other officers executed a search warrant there. The bank was closed at the time. Defendant Clements was the passenger in a car that drove into the bank parking lot, parked and looked around the area. Dickinson observed Clements walk over to the nearby bus stop and take something out of the trash can. Thereafter, Clements and his friend drove away. Dickinson thought this was suspicious and decided to follow the car Clements was riding in.

Clements eventually stopped at the Circle K near 22nd Street and the Frontage Road

1  in Tucson. The driver of the car exited the car and went to the pay phone. Clements went
2  into the store to make a purchase.

3      Dickinson had requested assistance from a uniformed officer. Tucson Police Officer
4  Christopher Morin responded. Morin went into the store and, at Dickinson's direction, asked
5  Clements if he would step outside the store to answer questions. It is disputed concerning
6  whether Clements asked for permission to complete his purchase, but undisputed that he did
7  not complete the purchase. Clements left the store and went to the west side of the store
8  where he was questioned by both Dickinson and Morin, and possibly other officers.

9      Clements was asked his name and date of birth. Twice he gave false names. After
10 giving a false name the second time, Dickinson decided to place Clements under arrest.
11 Reporter's Transcript, May 5, 2008, p.19 (hereafter "RT ___"). Thereafter, Dickinson
12 searched Clements' wallet, recovered his Oregon driver's license and determined Clements'
13 correct identity. *Id.*

14     *Miranda* warnings were never given. RT 32, 72, 85. Clements did not respond to
15 questions concerning how long he had been in Tucson. RT 64. At some point after Clements
16 was under arrest, Dickinson searched the car Clements had been riding in. RT 42. Nothing
17 was seized as a result of the search of the car. After Clements gave the second false name,
18 he made no further incriminating statements. RT 53, 63.

19 **DISCUSSION**

20     It is clear that Clements was "in custody" after he gave the second false name, and that
21 he was never given his *Miranda* rights. However, no incriminating statements were made
22 after that point in time and no other evidence, other than Defendant's true name identity was
23 recovered. Defendant seeks to suppress:

24         His initial stop, the fact that he gave false names, that they told
           him he was a registered sex offender ... and that he had to report
25         ... I don't even want that stop to come in at his trial.

26 RT 53.

27     The Government justifies the initial stop as being within an officer's prerogative to
28 approach a person and ask if they are willing to ask questions without violating the Fourth

1 Amendment. The officer needs no articulable suspicion, but the subject must be free to either
2 refuse to answer questions or leave. *Florida v. Royer*, 460 U.S. 491, 497-498, 103 S.Ct.
3 1319, 1324 (1983). Officer Dickinson and Officer Morin testified that Clements was free to
4 go until they determined he gave a false name the second time. Clements testified that he
5 asked if he had to answer questions and whether he could leave within two or three minutes
6 after the questioning started. RT 85-86. According to Clements, he was told that there were
7 questions Morin and Dickinson wanted answered, and at some point, Dickinson came back
8 from his patrol car and told Clements he was not free to leave. Under Clements' version, it
9 would appear likely that he was told he could not leave after giving the first false name but
10 before giving the second false name, since the first request for his name and date of birth
11 would have taken place at the inception of the encounter.

12 Up until at least the point that Clements gave the first false name, a reasonable person
13 would understand that they were free not to answer questions and could leave. At the same
14 time, it seems doubtful the officers would have let Clements leave after they determined he
15 gave them a false name.

16 The first statement of a false name should not be suppressed because Clements was
17 not in custody when the statement was made. As to the second false name given, the issue
18 becomes, can officers ask a person who is in custody for identifying information without
19 violating *Miranda*? The courts have repeatedly held that officers can ask an in-custody
20 defendant for identifying information without first providing *Miranda* warnings.
21 *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 2650 (1990); *United States v.*
22 *Perez*, 776 F.2d 797, 799 (9th Cir. 1985); *People v. Farnam*, 24 Cal. 4th 107. 180, 47 P.3d
23 988, 1040, 121 Cal. Rptr. 2d 106, 168 (2002). Therefore, even if Clements was in custody
24 when the second inquiry of his identity occurred, Clements' false response should not be
25 suppressed.

26 Clements cannot suppress the fact of his identity. *United States v. Guzman-Bruno*,
27 27 F.3d 420, 421 (9th Cir. 1994). Nor is there any basis to suppress statements made by the
28 officers advising Clements of his obligation to register as a sex offender. The officer's

1  testimony about what they told Clements obviously does not implicate any rights of Clements
2  to be protected for compulsory self-incrimination.

3  While it is clear that *Miranda* warnings should have been given, at least by the point
4  when Clements provided a false name for the second time, no incriminating statements were
5  obtained thereafter and no other evidence was seized.  The evidence of Defendant's identity
6  is not subject to suppression.  Therefore, both motions should be DENIED.

7  Wherefore, it is the recommendation of this Court, that the District Judge, after his
8  independent review and consideration, enter an order denying the Motion To Suppress
9  Unlawful Seizure *[Dkt 8]*, and the Motion To Suppress Statements *[Dkt 9]*.

10  Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties have ten (10) days from the date of
11  this Report and Recommendation to file written objections to these findings and
12  recommendations with the District Court.  Any objections filed should be filed with the
13  following case number: **CR 08-00303-TUC-DCB**.

14  DATED this 9th day of June, 2008.

*[signature]*

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE